Good afternoon, Judge Silverman. May it please the Court, Nathaniel Garrett for the petitioner Jeffrey Lee Duvardo, and I'd like to reserve two minutes for rebuttal, please. Your Honors, in this case, Mr. Duvardo appeals from the denial of his petition for writ of habeas corpus. In our briefing, we raised three issues. First, that the evidence was not sufficient to convict, sustain Mr. Duvardo's conviction for first-degree murder in the death of his parents. Second, that Mr. Duvardo's due process rights were violated by the admission of the testimony of FBI Special Agent Mark Zafaric, which amounted to a poorly disguised endorsement of the prosecution's theory of guilt. And third, that Mr. Duvardo's due process rights were violated by the admission of evidence that he was a bigamist, evidence from which no permissible inferences could be drawn. We think all three arguments merit the Court's attention. I'd like to focus this afternoon first on the admission of Agent Zafaric's testimony. Your Honors, in the last reasoned State court decision, the California Court of Appeal rejected Mr. Duvardo's State law challenges to Agent Zafaric's testimony. Nowhere in that opinion does the Court adjudicate or even acknowledge that Mr. Duvardo also raised the Federal due process argument. Accordingly, we submit that the claim should be reviewed under the de novo standard of review. But importantly, however, whether reviewed de novo or under AEDPA's more deferential standard, the admission of Agent Zafaric's testimony violated Mr. Duvardo's due process rights. What was the worst thing he testified to? Well, I'll pick one out, which I think was that the offender and the victims had a relationship. Say that again. That the offender and the victims had a, quote, unquote, relationship. But it's difficult to separate one thing from them all. This was one of the lengthier, if not the lengthiest,  There were a variety of things he said which we think were unreliable. He never identified your client. He gave the characteristics of the assailant as described in his testimony. But your client was never identified. And he was admonished by the judge, in fact, to do just that. So what is wrong with an expert in this area  of law? Well, I think it's important to note that the premises were unforced so that it's possible, it's probable that the people, the victims knew the assailant because there was no forced entry. And also for the opinion that the manner of the death was so horrendously vile and offensive that the assailant was not just there to steal money or something, but had a personal vendetta, what is wrong with that? He never identified your client. He gave the physical characteristics of the assailant. That's true, Your Honor. But that's no different from cases like United States v. Quigley, which we cite in our brief, where the individual, the witness, does not expressly say, I believe this defendant did it. But the question, at least in cases like Quigley and Cooper v. Souders, is whether the testimony, in effect, amounts to an endorsement of guilt. And it's a line-drawing exercise. It's contextual. And we think the line was crossed here. For example, a lot of the testimony was speculative, and that's not the real nature of the problem. The problem is that it was entirely speculative and conjectural in a way that dovetailed perfectly with the prosecution's case. So, for example, Agent Sparic was the only one willing to say that because of the nature of the killing, this was somebody who had a relationship, that had a personalized anger towards the victims. And, indeed, much of his testimony didn't make much sense. For example You have a Supreme Court case that says that this type of psychological testimony as to the assailant and the relationship between the assailant and the victim is unconstitutional. Your Honor, the case we rely on is Murdoch, and the principle is that the determination of guilt remains for the exclusive province of the jury. That was a case that That's a very general case. That's not But, Your Honor, it's been found to have constitutional ramifications in this circuit. In Braley v. Gladden, the Court found it was a habeas case, and the Court found that there are constitutional ramifications to infringing on the jury's right to find guilt. And so, of course, the question becomes, if you apply ad pedeference, then the question becomes whether Moose Lawton prevents extension of Murdoch to this case. We submit it doesn't because the principle there, the fundamental principle, didn't have to do with the judge. It had to do with the role of the jury. And here, it was much more offensive for the expert to endorse the prosecution's theory of guilt than the judge. But you say endorse the prosecution. He's testifying to deductions that he made as a, as a, you know, an expert in the area. Well, they're not quite deductions, Your Honor, and that's not just my opinion. There's a text Well, in the California court of appeals opinion, they likened him to Sherlock Holmes, didn't they? That's true, Your Honor, but in the only textbook about crime reconstruction, a textbook called Crime Reconstruction, the authors use this case and this testimony as a literally textbook example of, of expert opinion gone awry. They say agent's affair, quote, was brought in to validate the police investigator's theory of the case. Is this in the record? It's not, Your Honor. And I'm not What are you citing? Well, it's a textbook called Crime Reconstruction. Well, I don't care what it is. I mean, this wasn't before the district judge, was it? No, it wasn't, Your Honor. It was a pro se, you know, petition. And I'm not the reason I'm relying. It's just to point out that this, this, this was inappropriate even by the standards that control crime reconstruction. And No, I mean, that's not in evidence. What we have is the California court of appeals saying this was well within what experts can, can testify to. But, but, Your Honor, the question here is whether under Federal case law it violated its due process. Well, I'm happy to hear Federal cases. I don't want to read, you know, hear about your book, but do you have any Federal cases that say   But, but, Your Honor, again, the Supreme Court press that we rely on is Murdoch and, and the case. What exactly did he say? He said, in his opinion, judging from the crime scene, he deduced that the He deduced victim probably knew the, the victims knew the assailant. That there was a relationship between the offender and the victim, that the victim He opined that there was a, that the robbery or the burglary was staged. And that's what led him to the conclusion that there was a relationship. Why can't he say that? Well, again, Your Honor, it's contextual. It has to do with all the other things he said as well. For example, that the victims didn't feel threatened by the killer, that the killer was working out of a personalized anger, that the victim would not have found the house unless he knew where it was. Was there evidence in the record to support that, those opinions based on that psychological testimony? Well, no one else was willing to, to testify about his emotional, the emotional makeup of the killer. Well, I mean, the evidence in the record is that there was no forced entry, that the victim was killed in a brutal manner, which would not bespeak a robbery. And the other, the other evidence in the evidence supported the facts or supported facts of the opinion he held. Did they not? No, I don't think so, Your Honor. I think the manner of entry Do you think someone robbing a place would have taken that many times to stab someone when they were already dead? I think the manner of entry actually cuts against the prosecution's theory of the case. I mean, the manner of entry, the only, the only entryway that was open was a back door, a back sliding glass door that would not have been used by somebody who knew the Okay. So that's a jury question. You, he has his explanation. You have your explanation. No. And to be sure, but as far as Agent Saffare's testimony is concerned, you know, the question is whether he could draw these conclusions from the evidence fairly when it was, it was a plain endorsement of the prosecution's theory of the case. You wanted to reserve two minutes, I think you said. Thank you. Good morning. Good afternoon.  Right afternoon. Right afternoon. Good afternoon. May it please the Court. Appellant raises We need your name for the record, please. Your name for the record, please. Joan Killane for Respondent, Your Honor. Thank you. Petitioner raises the same claims here that he raised in the trial court before the jury in his new trial motion in his appeal to the State Court of Appeal, to the State Supreme Court, to the District Court, and to this Court. All of those courts have rejected his claims, both as to the sufficiency of the evidence and the admission of evidence that he challenges here. As far as the specific claim that he's addressed before the Court today involving agents of Herrick's testimony, the Court of Appeal laid out the points that agents of Herrick testified to. As the Court pointed out, and as the District Court also found, agents of Herrick never testified to profile evidence of the offender in this case. But explicitly or implicitly? It definitely pointed to the defendant. He actually, the bone of contention in the trial court by the defense counsel was that he not testified to profile evidence that would have pointed to appellant. He did have in his report profile evidence on gender, sex, race, that kind of thing, discussing a potential perpetrator. The defense counsel objected to any evidence of that kind. And the District Attorney made clear that he had no intention of offering that. He testified. Did Sepharic testify that the victims were killed while they were probably pleading for their life? There was one point that he testified to that, as the Court pointed out, that the District Court found incorrect. Sepharic surmised that the father who was killed in the laundry room may have been And the District Court found that that was improper because he could not have known that. He could not have known whether the victim was pleading. But the District Court found no problem with any of the other evidence Sepharic testified to. Did he testify that this wasn't random violence? He testified that based on the victim's security consciousness, the locks that they used, all the security measures that they used, that they would not have allowed a stranger into their home. So he testified that it was likely someone known to them because there's no evidence of a forced entry. But you see, the problem is this. That may be a reasonable interpretation of the evidence, but there are other reasonable interpretations of the evidence, too, aren't there? Certainly, Your Honor. And is the trial So why should, you know, a person be allowed to testify, well, this is the way I look at the evidence, and so you should look at it the same way. Isn't that the jury's function? Is that the lawyer's function to do a closing argument? He's testifying to one possible interpretation of the evidence. Yes, Your Honor. And, in fact, Agents Sepharic specifically testified that he never identifies a perpetrator and that his role he had no expertise in that area. He said it had to be someone, according to him, that the victims knew, right? I think there's a big difference between suggesting that because the victims would not likely have let a stranger into their home, and there's no evidence of forced entry here. No, but another, for instance, another, I think, equally reasonable interpretation is that this fellow was out, the husband was out, apparently he could have been out gathering wood, right, or getting wood from the woodpile. Isn't that right? The father, yes. That was part of the testimony. So maybe this, you know, stranger encountered the guy out at the woodpile and, you know, brought him into the house without a forced entry. Isn't that a possibility? Your Honor, there are other possibilities. Isn't that a reasonable possibility, reasonable interpretation of the evidence? That a stranger followed him into the house. Forced him into the house and not knifed one after encountering him at the woodpile. Well, it does conflict with the evidence that the Mrs. DiVardo was killed first because she was killed inside the home, and that the Agents Sepharic testified and other evidence suggested that she would have been the one killed first, which would suggest that Mr. DiVardo was not killed by someone who followed him into the home. But the important... That's a suggestion. That's not the only, you know, necessary inference from that. Yes, Your Honor. Limited, you know, pieces of evidence that we know, right? The important... Because, you know, it comes very close to speculation, doesn't it? I don't agree, Your Honor. I think the important thing here is that the Agent testified to matters that he had a great deal of experience in. He was called in, in fact, because there are so few homicides in Lake County that the local police officers had rarely dealt with homicides. Well, if I, for instance, asked a guy to come in and help the local police officers, it's another thing to come in and tell the jury, this is what happened and this is why you should find this guy guilty. Your Honor, I disagree that Agents Sepharic testified that he knew what happened and that they should believe him. The important point is that the... It comes pretty close, doesn't it? Pardon? It comes pretty close to saying I know what happened and this is what happened. Isn't that pretty close to saying that? I don't think so, Your Honor. I don't think the record supports that interpretation. And the jury was instructed that it could consider the expert's testimony. It was given extensive instructions on how to weigh the testimony. Let me change the argument a little bit. Assuming, and I don't know what the answer is, but assuming, you know, this testimony amounts to some kind of constitutional violation, what's, you know, how do we review it for whether some relief should be granted? It has to be shown in the plaintiffs, right? Yes, Your Honor. How, you know, strongly showing? What is the... Well, Your Honor, this is a claim being raised under the ADPA. So first of all, he has to show that there is clearly established Supreme Court authority which precludes the admission of this type of evidence, which he has failed to do. And I think he's admitted that today. And he also has to... Well, in your view, there's no case directly on point. There's no case directly on point. And in our view and in the view of the courts that have reviewed these claims before, the agent did not testify that Petitioner, Mr. Duvado in this case, killed his parents. The agent never testified to the ultimate issue. And in fact, experts can testify on matters that are close to the ultimate issue. But the expert never said this defendant, unlike in some of the cited cases Petitioner has mentioned, that this defendant is the only person who could have done that. He never said that. He said he had no expertise in the matter. Isn't our review here de novo? I don't think the California appellate court passed on this in their opinion. So that even though we're on EDPA review, we have de novo review of the actual admission of this agent's testimony. And so the question before this panel, I assume, is whether or not we're dealing here with junk science, which would be a violation of the 14th Amendment and the 6th Amendment. Your Honor, I disagree that there's de novo review in this court. Well, did the appellate court in California, in their opinion, deal with this? The appellate court dealt with all of the issues that Appellant raised in his brief. What Appellant did at the beginning of the case was not to analyze this issue at all. There was no analysis concerning the admission of this agent's testimony. There was extensive analysis, Your Honor, and we've set that out in our brief. The court of appeal directly discussed Agent Zafiric's testimony, both in its statement of facts and this is one of the – there was only one. The court did not specifically say in responding to the argument, and also this is not a violation of Federal due process, it didn't say that. But the due process claim was raised in a one-sentence statement at the tail end of an argument raising several State law claims, and the one sentence was, and this also violates Federal due process, and cited one nonsurface case. That was the end of the discussion. So the State courts are not required under State law, when an argument is not developed when there's no Federal argument being made, they're not required to give an addition to rejecting the State law claims in extensive analysis. But the court – the due process was based – the due process argument, to the extent in the one sense it was raised, was solely based on the violation, the alleged violation of State law. You never claimed it wasn't exhausted in – at least we granted the certificate for it to be heard by this Court, so obviously – and there's been no briefing by you that it's – well, we didn't have a briefing on whether it was exhausted or not. But the basic question is whether we're dealing with junk science here, and the imprimatur of this agent's testimony coming from the FBI behavior analysis lab or whatever it is, it could be quite devastating, and I'm unaware that this type of testimony is regularly received in criminal proceedings. Your Honor, this agent actually had testified in many other cases. It is routinely received. It is not junk science. He simply testified to information that could be gleaned from the crime scene about the victims, the type of area they lived in, the staging of the crime scene, as the victim would have known the victim in this case. Thank you very much. Mr. Barrett, you've got about two minutes left. My time is up, correct? Yes. Thank you, Your Honors. I'd just like to make one brief point about the standard review and then one brief point about Agent Sparrow's testimony. We do not concede that we lose under AEDPA standard. The point, however, is we do believe de novo review applies. I am aware of the Court's recent opinion in Murdoch v. Castro, which describes when de novo review applies, but I would like to point out that this is a different situation where Mr. Duvardo raised both a State law argument and a Federal argument as to an issue, and at least three circuits have now held that when the State law issue is addressed by the Court but not the Federal issue, then de novo review applies. I'll just cite one case, and you can jump off from that. That's Danner v. Motley, 448F3rd. Well, de novo review applies, but we still have to find ultimately that the decision was contrary to or an unreasonable application of Supreme Court law, don't we? Well, that's what I think what Murdoch was talking about in that situation, but if it was true de novo review, no, I think the question is yes. Well, it's not true de novo review. I mean, we analyzed the question for the first time, but then we analyzed it with a view toward whether, looking at it for the first time, whatever was the State court decision, when all is said and done, was it off the wall, basically? Well, but under de novo review, I don't think the question is whether it's clearly establishing Supreme Court precedents, whether there was a constitutional violation. Your Honors, this is the first time I've heard that we didn't properly raise the Federal argument. I would urge the Court to look at page 8081, where he makes the Federal – of the appellate court brief where he makes the Federal argument. The title of the section is Seferov's victimology testimony was inadmissible under California and Federal case law. He cites two Federal cases, and it's longer than one sentence. And this is an issue that goes both to the Bigamy argument and Seferov. In both cases, they didn't address the Federal argument. And as to the – I would point out as to the merits, the speculative nature of Seferov's argument. I mean, he did testify to things that are not typical in any criminal case, that he could not know whether the individual was pleading for his life. The order on Cross, he admitted, you know, I don't really know that the mother was killed first because she could have been upstairs at the time. Well, Cross examined it and served its purpose. But, Your Honor, in this case, I don't think it did. I mean, as we point out, the court of appeal itself said this is like Sherlock Holmes. So even they weren't willing to question the validity of the testimony. Thank you. Thank you, Your Honor. Thank you very much as well. The case just argued is submitted.
judges: Cowen, Tashima, Silverman